142 So. 87

### STATE v. ANGLO–CHILEAN NITRATE SALES CORPORATION.

### 3 Div. 996.

Supreme Court of Alabama.

May 12, 1932.

Rehearing Denied June 9, 1932.

Thos. E. Knight, Jr., Atty. Gen., and Frontis H. Moore, Asst. Atty. Gen., for the State.

Lange, Simpson & Brantley, of Birmingham, for appellee.

144

The appeal is by the state from the decree of the equity court overturning the final assessment of a franchise tax of the Anglo-Chilean Nitrate Sales Corporation, a foreign corporation, for the year 1930, entered by the tax commission of this state. The assessment was based upon the valuation of the capital employed within the state, as authorized by our statute passed in obedience to the mandate of our Constitution. Gen. Acts 1927, p. 176; section 232, Constitution of Alabama; Louisville & N. R. R. Co. v. State, 201 Ala. 317, 78 So. 93; Ellis v. Handley; 214 Ala. 539, 108 So. 343; Kansas City, M. & B. R. R. Co. v. Stiles, 182 Ala. 138, 62 So. 734; Louisville & N. R. R. Co. v. State, 248 U. S. 533, 39 S. Ct. 18, 63 L. Ed. 406.

The cause was tried in the court below upon an agreed statement of facts which appears in the report of the case.

The corporation defended upon the theory, evidently accepted by the chancellor, that the basis of the assessment was the valuation of the nitrate imported from Chile, stored in a public warehouse in Mobile, Ala., in the original packages or sacks of one hundred pounds each, and as such constituted imports, immune from state taxation under the provisions of our Federal Constitution, article 1, § 10, cl. 2, as construed in Brown v. Maryland, 12 Wheat. 419, 6 L. Ed. 678; Cook v. Pennsylvania, 97 U. S. 566, 24 L. Ed. 1015; May v. New Orleans, 178 U. S. 496, 20 S. Ct. 976, 44 L. Ed. 1165.

The defendant duly qualified as a foreign corporation to do business in this state, appointed a resident agent, and that it actually engaged in business in Alabama by selling its nitrate through a salesman both within and without the state appears as an uncontroverted fact. It seeks to be relieved from this franchise tax solely upon the theory the imported nitrate, the sale of which constituted· its business, was immune from state taxation.

■ But we think the argument stresses too far the inhibition against state taxation of imports found in our Federal Constitution and overlooks the nature of the tax here in question. The Federal Constitution, in the respect here pertinent, is that "no State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws." The franchise tax here imposed applies alike to all foreign corporations engaged in business in this state. It makes no reference to imports, which are here involved solely because of the business in which the corporation was engaged. The following familiar general principle of law is not questioned: "It must be regarded as finally settled by frequent decisions of this court that, subject to certain limitations as respects interstate and foreign commerce, a state may impose such conditions upon permitting a foreign corporation to do business within its limits as it may judge expedient, and that it may make the grant of privilege dependent upon the payment of a specific license tax, or a sum proportioned to the amount of its capital used within the state." New York v. Roberts, 171 U. S. 658, 19 S. Ct. 58, 59, 43 L. Ed. 323. And in Horn Silver Mining Co. v. New York, 143 U. S. 305, 12 S. Ct. 403, 404, 36 L. Ed. 164, the opinion quotes from the early case of Paul v. Virginia, 8 Wall. 168, 19 L. Ed. 357, as follows: "Having no absolute right of recognition in other states, but depending for such recognition and the enforcement of its contracts upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those states may think proper to impose. They may exclude the foreign· corporation entirely, they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as, in their judgment, will best promote the public interest. The whole matter rests in their discretion."

And, after stating that this doctrine is settled by the decisions and may be considered at rest, the opinion proceeds: "Only two exceptions or qualifications have been attached to it in all the numerous adjudications in which the subject has been considered, since the judgment of this court was announced more than a half century ago in Bank [of Augusta] v. Earle, 13 Pet. 519 [10 L. Ed. 274]. One of these qualifications is that the state cannot exclude from its limits a corporation engaged in interstate or foreign commerce, established by the decision in Pensacola Telegraph Co. v. Western Union Telegraph Co., 96 U. S. 1, 12 [24 L. Ed. 708]. The other limitation on the power of the state is where the corporation is in the employ of the general government. * * * Having the absolute power of excluding the foreign corporation, the state may, of course, impose such conditions upon permitting the corporation to do business within its limits as it may judge expedient; and it may make the grant or privilege dependent upon the payment of a specific license tax, or a sum proportioned to the amount of its capital."

■ It has also become equally as well settled that an excise tax may properly be measured by tax immune property. In discussing this question the court in Home Ins.

Co. v. New York, 134 U. S. 594, 10 S. Ct. 593, 595, 33 L. Ed. 1025, used the following expressions: "The validity of the tax can in no way be dependent upon the mode which the state may deem fit to adopt in fixing the amount for any year which it will exact for the franchise. No constitutional objection lies in the way of a legislative body prescribing any mode of measurement to determine the amount it will charge for the privileges it bestows. It may well seek in this way to increase its revenue to the extent to which it has been cut off by exemption of other property from taxation. * * * From the very nature of the tax, being laid upon a franchise given by the state, and revocable at pleasure, it cannot be affected in any way by the character of the property in which its capital stock is invested."

This principle was fully recognized and given application in the recent case of Educational Films Corporation v. Ward, 282 U. S. 379, 51 S. Ct. 170, 171, 75 L. Ed. 400. There the corporation challenged the franchise tax assessed against it so far as it was measured by the amount of royalties received from copyrights which were immune from state taxation. The court denying relief, considered the question answered in Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 353, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, where was reaffirmed the distinction, repeatedly made, between a tax, invalid because laid directly on governmental instrumentalities or income derived therefrom, and an excise which is valid because imposed on corporate franchises, even though the corporate property or income which is the measure of the tax embraces tax exempt securities or their income, and numerous illustrations from the adjudicated cases are noted, among them those holding a state inheritance tax valid, although measured by the value of United States bonds which are transmitted (Plummer v. Coler, 178 U. S. 115, 20 S. Ct. 829, 44 L. Ed. 998) ; a tax on net income, though receipts from exports are included in the compilation (Peck & Co. v. Lowe, 247 U. S. 165, 38 S. Ct. 432, 62 L. Ed. 1049) ; the inclusion in a state income tax of receipts from interstate commerce, held not a prohibited burden on such commerce (United States Glue Co. v. Oak Creek, 247 U. S. 321, 38 S. Ct. 499, 62 L. Ed. 1135, Ann. Cas. 1918E, 748). Further illustrative is Kansas City, F. S. & M. R. Co. v. Botkin, 240 U. S. 227, 36 S. Ct. 261, 60 L. Ed. 617, where it is held that, though a state may not tax tangible property located beyond its boundaries (Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 26 S. Ct. 36, 50 L. Ed. 150, 4 Ann. Cas. 493), yet it may measure a tax on franchises of domestic corporations by corporate property, even though without the state.

And, after observing that the franchise statute there in question could have no ap-

plication independently of the corporation's enjoyment of the privilege of exercising its franchise, the tax obviously was not exclusively a tax on income apart from the franchise, the court in the Ward Case, supra, made the following observations which we consider as having some bearing upon the instant case:

"Under the Constitution the privilege of exercising the corporate franchise is the legitimate object, and the immunity of federal instrumentalities from taxation, a legitimate restriction, of the state power to tax. To give both to the power and to the immunity such a practical construction as will not unduly restrict the power of the government imposing the tax, or the exercise of the functions of the government which may be affected by it, is the problem necessarily involved in determining the extent of the immunity. See Metcalf & Eddy v. Mitchell, 269 U. S. 514, 523, 524, 46 S. Ct. 172, 70 L. Ed. 384. So far as it concerns the power of a state to impose a tax on corporate franchises, the problem has long since ceased to be novel. While this court, since McCulloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579, has consistently held that the instrumentalities of either government, or the income derived from them, may not be made the direct object of taxation by the other, Weston v. City Council of Charleston, 2 Pet. 449, 7 L. Ed. 481; Dobbins v. Commissioners of Erie County, 16 Pet. 435, 10 L. Ed. 1022; Home Savings Bank v. Des Moines, 205 U. S. 503, 27 S. Ct. 571, 51 L. Ed. 901; Indian Territory Illuminating Oil Co. v. Oklahoma, 240 U. S. 522, 36 S. Ct. 453, 60 L. Ed. 779; Federal Land Bank v. Crosland, 261 U. S. 374, 43 S. Ct. 385, 67 L. Ed. 703, 29 A. L. R. 1, it has held with like consistency that the privilege of exercising the corporate franchise is no less an appropriate object of taxation by one government merely because the corporate property or net income, which is made the measure of the tax, may chance to include the obligations of the other, or the income derived from them. The constitutional power of one government to reach this permissible object of taxation may not be curtailed because of the indirect effect which the tax may have upon the other. * * *

"It is said that there is no logical distinction between a tax laid on a proper object of taxation, measured by a subject-matter which is immune, and a tax of like amount imposed directly on the latter; but it may be said with greater force that there is a logical and practical distinction between a tax laid directly upon all of any class of government instrumentalities, which the Constitution impliedly forbids, and a tax such as the present, which can in no case have any incidence, unless the taxpayer enjoys a privilege which is a proper object of taxation, and which would not be open to question if its

amount were arrived at by any other non-discriminatory method.

"This court, in drawing the line which defines the limits of the powers and immunities of state and national governments, is not intent upon a mechanical application of the rule that government instrumentalities are immune from taxation, regardless of the consequences to the operations of government. The necessity for marking those boundaries grows out of our constitutional system, under which both the federal and the state governments exercise their authority over one people within the territorial limits of the same state. The purpose is the preservation to each government, within its own sphere, of the freedom to carry on those affairs committed to it by the the Constitution, without undue interference by the other. * * *

"Having in mind the end sought, we cannot say that the rule applied by this court for some seventy years, that a nondiscriminatory tax upon corporate franchises is valid, notwithstanding the inclusion of tax exempt property or income in the measure of it, has failed of its purpose, or has worked so badly as to require a departure from it now, or that the present tax, viewed in the light of actualities, imposes any such real or direct burden on the federal government as to call for the application of a different rule."

The cases relied upon by appellee (Ozark Pipe Corporation v. Monier, 266 U. S. 555, 45 S. Ct. 184, 69 L. Ed. 439; Postal Telegraph Co. v. Adams, 155 U. S. 688, 15 S. Ct. 268, 39 L. Ed. 311; Western Union Tel. Co. v. Kansas, 216 U. S. 1, 30 S. Ct. 190, 54 L. Ed. 355; Galveston, H. & S. A. R. Co. v. Texas, 210 U. S. 217, 28 S. Ct. 638, 639, 52 L. Ed. 1031) involved the question of undue burden upon interstate commerce, immunity of which from state interference has been zealously guarded by our federal decisions (Western Union Tel. Co. v. Kansas, supra), and concerning which the court has expressed difficulty in prescribing a satisfactory rule, and as to which a distinction has also been made between corporations organized to carry on interstate commerce, and having a quasi public character, and corporations organized to conduct strictly private business. New York v. Roberts, supra.

The Roberts Case, supra, had to deal also with the matter of imports, and these observations were evidently intended in answer to argument rested upon the interstate commerce cases cited in the opinion. In that case the basis for the franchise tax imposed by the state of New York bore relation to the amount of capital stock of the Michigan corporation within New York. The comptroller of New York, in fixing the amount of capital so employed, included a large sum as representing the value of imported crude drugs. The corporation sought a correction of the comptroller's assessment by reducing the amount to only its leasehold of the warehouse in that state. Discussing the matter of imports, here pertinent, the court said:

"Again, it is said that, even assuming that the importation of crude drugs and their sale in the original packages constituted a portion of the corporate business, no tax could be imposed by the state, under the doctrine of Brown v. Maryland, 12 Wheat. 419 [6 L. Ed. 678].

"But that case is inapplicable. Here no tax is sought to be imposed directly on imported articles or on their sale. This is a tax imposed on the business of a corporation, consisting in the storage and distribution of various kinds of goods, some products of their own manufacture and some imported articles. From the very nature of the tax, being laid as a tax upon the franchise of doing business as a corporation, it cannot be affected in any way by the character of the property in which its capital stock is invested."

We consider this language here much in point, particularly when it is considered that the corporation there only sought a reduction of the assessment upon the theory the imports were immune from state taxation. The distinction between that case and this appears to be one of degree and not of kind.

The statute here under review has no reference to imports, but is merely of a general character relating to the fixation of the amount of a franchise tax upon foreign corporations doing business in this state. The matter of imports is entirely incidental, only indirectly and remotely affected by reason of the business conducted.

Nor do we consider the fact that in the Roberts Case, supra, it appeared there was employed in New York a continuing capital used in the purchase of crude drugs, is a matter sufficient upon which to constitute any material distinction between that and the instant case. True, it here appears the corporation kept no bank account in Alabama. But it had a designated agent, and sold its nitrate through a salesman in Alabama, the sales being to customers both within and without the state, and shipped through its agency to such customers from the warehouse located in Alabama.

We attach no significance to the requirement that orders must first be approved in the New York office; nor to the fact that, when shipment was made, it was with bill of lading and shipping instructions through the bank nearest the customer, the sale being for cash and the proceeds forwarded by such local bank to the Merchants National Bank in Mobile, and by that bank at once forwarded to the corporation in New York. These details go to show the corporation was actually engaged in business in this state, and

enjoying the protection of its laws, and the mere fact that the proceeds of the business did not linger on deposit in this state, but were forwarded to the New York office, does not serve as a point of material differentiation in this case and that of the Roberts Case, supra.

It is argued that the right to import carries with it also the right to sell (Brown v. Maryland, supra) in the original packages, and that the basis of measurement being the capital employed results in an imposition of a duty or tax upon such imports. The nitrate is shown to have been imported from Chile in one hundred pound sacks, and that is the form in which it was sold. We are not prepared to concede that the doctrine of "original package" cases would be extended to embrace importation of goods as to which the method of shipment was likewise the method of sale; and we interpret some of the reasoning of the opinion in May v. New Orleans, supra, as tending to this view. Certainly such an interpretation of the Constitution would at least have a tendency to encourage merchants and traders seeking to avoid state and local taxation, to import from abroad their merchandise in original salable packages.

But this question aside, and undetermined, we think the argument overlooks the nature of the tax here imposed, fully discussed in Flint v. Stone Tracy Co., supra, wherein it is noted that the tax is an excise upon the particular privilege of doing business in a corporate capacity, and with the advantages derived therefrom, the court saying:

"In the case at bar we have already discussed the limitations which the Constitution imposes upon the right to levy excise taxes, and it could not be said, even if the principles of the 14th Amendment were applicable to the present case, that there is no substantial difference between the carrying on of business by the corporations taxed, and the same business when conducted by a private firm or individual. The thing taxed is not the mere dealing in merchandise, in which the actual transactions may be the same, whether conducted by individuals or corporations, but the tax is laid upon the privileges which exist in conducting business with the advantages which inhere in the corporate capacity of those taxed, and which are not enjoyed by private firms or individuals. These advantages are obvious, and have led to the formation of such companies in nearly all branches of trade. The continuity of the business, without interruption by death or dissolution, the transfer of property interests by the disposition of shares of stock, the advantages of business controlled and managed by corporate directors, the general absence of individual liability, these and other things inhere in the advantages of business thus conducted which do not exist when the same business is conducted by private individuals or partnerships. It is this distinctive privilege which is the subject of taxation, not the mere buying or selling or handling of goods, which may be the same, whether done by corporations or individuals."

We think the authorities cited demonstrate there is no objection to the basis of measurement of the tax. Indeed, argument to the contrary would be to argue the invalidity of our constitutional provision to that end, which has been approved here as well as in the federal courts. Louisville & Nashville R. R. Co. v. State of Alabama, supra. And clearly the corporation in the instant case has no just cause of complaint as to the basis of the measurement of the tax.

The tax commission based the assessment upon the value of the nitrate on hand and in storage in Alabama on December 31, 1929, amounting in value to $712,846.72, with nitrate on hand outside of Alabama of the value of $5,000,000. The amount in storage on that particular date is merely taken as a fair estimate of the capital actually employed, but the amount actually sold in this state is not made to appear. The amount of sales may have been many times the above-stated amount, but, if there remained on hand only the nitrate of the value of $712,846.72 on December 31, 1929, the tax is to be so measured by that sum and not otherwise. These observations are merely to the point no unjust measurement is shown to have been applied, and to demonstrate that in fact the tax is not affected by the volume of business done in Alabama.

The cases disclose that, in consideration of such character of taxation as here involved, the court looks to a practical rather than a logical or philosophical distinction, and the whole scheme of taxation is to be taken into account. "Regulation and commerce among the states both are practical rather than technical conceptions, and, naturally, their limits must be fixed by practical lines. * * * A practical line can be drawn by taking the whole scheme of taxation into account. That must be done by this court as best it can." Galveston, H. & S. A. R. Co. v. Texas, supra.

As we read the cases, consideration is proper to be given the evident purpose or object of the statute or its inevitable effect. In Educational Films Corporation v. Ward, supra, discussing this question, the court quoted from Macallen Co. v. Massachusetts, 279 U. S. 631, 49 S. Ct. 432, 73 L. Ed. 874, the following excerpt: "A tax very well may be upheld as against any casual effect it may have upon the bonds of the United States when passed with a different intent and not aimed at them," and then proceeded to state:

"It cannot be said that the present tax was aimed at copyrights." And in Kansas City, M. & B. R. R. Co. v. Stiles, 242 U. S. 111, 37 S. Ct. 58, 61, 61 L. Ed. 176, the court, in discussing the insistence that the franchise tax imposed a burden upon interstate commerce, said:

"So of the objection that the tax imposes a burden upon interstate commerce, the test of validity recognized in previous cases * * * is the nature and character of the tax imposed. The state may not regulate interstate commerce or impose burdens upon it; but it is authorized to levy a tax within its authority, measured by capital in part used in the conduct of such commerce, where the circumstances are such as to indicate no purpose or necessary effect in the tax imposed to burden commerce of that character. In the present case, the franchise tax is imposed upon the capital stock of a corporation consolidated under the state law, and engaged in both interstate and intrastate commerce. We find nothing in the amount or character of the tax which makes it a burden upon interstate commerce, and so beyond the authority of the state to impose."

Certainly, if the courts are to be influenced upon such a consideration, then clearly there is nothing in the instant case to in the least indicate any purpose to in any manner interfere with imports or foreign commerce. These are matters only incidentally and indirectly affected. The end sought by the decisions was the preservation to each government, both the federal and the state, within its own sphere, of the freedom to carry on those affairs committed to it by the Constitution, without undue interference the one by the other. Educational Films Corporation v. Ward, supra.

Bearing in mind, therefore, the purpose to be attained by the adjudicated cases and considering the statute here involved, we are persuaded the state was properly within its sphere in demanding the franchise tax of the defendant corporation, and that such a tax in no manner violates any of its rights under the Federal Constitution, or tends to infringe upon the domain of the federal government.

We are therefore persuaded the chancellor incorrectly ruled in overturning the tax commission's assessment.

The decree will be reversed and the cause remanded to the court below for decree in accord with the views herein expressed.

Reversed and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.