Turner, .J.
 

 Did the action of the Tax Commissioner violate Article I, Section 10, Clause 2 of the Constitution of the United States which forbids the levying by a state, without consent of Congress, of an impost or duty on imports? Paraphrasing the language of Mr. Chief Justice Marshall in
 
 Brown
 
 v.
 
 Maryland.
 
 25 U. S. (12 Wheat.), 419, 443, 6 L. Ed., 678, 686: Did the tax here imposed intercept the import in its way to become incorporated with the general mass of property and deny it the privilege of becoming so incorporated until it shall have contributed to the revenue of the state ? ■ ■
 

 The purpose of the foregoing provision of tbe Constitution was to prevent the seaboard states, as well as
 
 *239
 
 other states, through which such imports were transported, from levying tribute before the imports reached their final destination and were sold or used by the importer.
 

 Brown
 
 v.
 
 Maryland, supra,
 
 is the leading case on the subject. At page 441 (686 L. Ed.), Mr. Chief Justice Marshall said:
 

 “But, while we admit that sound principles of construction ought to restrain all courts from carrying the words of the prohibition beyond the object the Constitution is intended to secure,' that there must be a point of time when the prohibition ceases, and the power of the state to tax commences; *
 
 * *
 
 . It is sufficient for the present to say, generally, that when the importer has so acted upon the thing imported, that it has become incorporated and mixed up with the mass of property in the country, it has, perhaps, lost its distinctive character as an import and has become subject to the taxing power of the state; * * # .”
 

 At page 447 (688 L. Ed.), Mr. Chief Justice Marshall said:
 

 “Sale is the object of importation.”
 

 Without reviewing -here all the later pertinent decisions of the Supreme Court of the United States, we think the following quotation from 15 Corpus Juris Secundum, 488, Section 123, correctly states the law, to wit:
 

 “The constitutional provision [Article I, Section 10, Clause 2 of the Constitution of the United States.] does not prohibit a tax on goods after they have entered the channels of trade or have been purchased subsequent to their arrival in this country, or after they have become mixed with other property in the state. ’ ’
 

 The record here discloses that the goods in question were purchased by appellant from New York agents of the sellers under written contracts which specifically
 
 *240
 
 provided that the sales were made f. o. b. port of entry in this country
 
 (i. a.,
 
 landed) and that title was to remain in the seller 'until the goods were fully paid for. The final invoices were made out by sellers’ agents after the arrival and weighing of the goods at port of entry. All payments were made to the sellers’ agents. These agents are exclusively representatives of the sellers and- receive no compensation from appellant. After the goods had been cleared through customs, the agents of the sellers made rail shipments to appellant under straight bills of lading. No sales were made to appellant c. i. f.
 

 • One of appellant’s witnesses stated that during the time here in question all contracts of purchase which were made with Stein, Hall & Company, Inc., of New York were made with that concern as a principal and not as agent. The agents through whom appellant made its purchases cleared the goods through customs. ■Appellant’s general manager testified:
 

 “*
 
 *
 
 * Our deal with the seller is to get that material landed to a port of entry and cleared through and then it is turned over to us.”
 

 This is an accurate description of the transactions and clearly shows that appellant is not the importer, but rather the purchaser of goods subsequent to their arrival in this country under contract to so take them.
 

 Appellant’s general manager testified that none of these goods were purchased or held with a view to sale, but solely for the purpose of conversion in the course of manufacture.
 

 That appellant’s contracts gave rise to imports cannot be questioned. But the fact remains that the purchases and deliveries were made in the United States and that while interstate commerce was involved after the goods were landed, foreign commerce or imports were not. The record discloses the following evidence
 
 *241
 
 offered on behalf of appellant through the answers of one of the sellers’ agents: i
 

 “H & A do not buy c. i. f. but
 
 landed at port in the United States.
 

 “When the goods arrive at an American port the documents are handed to us by the bank for the purpose of making customhouse entry and delivery. As a matter of service to H & A, the transshipment from port of arrival to Xenia is arranged by ourselves,. H & A instructing us the route by which they wish the goods forwarded and, of course,
 
 paying the freight from port of arrival to Xenia.
 

 “The foreign shipper does not reserve any power of disposition over the goods
 
 after the documents are handed to the negotiating bank at port of origin.
 

 “The contract calls for payment by H & A on delivery of the goods on dock at port of entry in U. S. A. These terms are in practice modified to the extent that payment is not made until the goods are weighed on the dock and invoice received by H & A.” (Italics ours.)
 

 The record discloses that another agent answered:
 

 “We definitely act as our principal’s selling representative and this is borne out by the fact that we offer and sell at the same price quoted by our principals and receive a fixed commission from them. Up to about a year ago [answer made September 17, 3941] the contract was made between Stein, Hall & Company, Inc. [seller’s agent] and Hooven & Allison Company,
 
 both as principals,
 
 but since then [about a year prior to September 17, 1941) we have been indicating on our contract ‘sold by Stein, Hall & Company, Inc. for the account of * * *.’ ” (Italics ours.)
 

 The contract forms used by each of the five sellers’ agents from whom appellant purchased are identical in terms, with the exception that in
 
 one
 
 sisal contract
 
 *242
 
 form submitted by Stein, Hall & Company, Inc., tbe provision for f. o. b. or landed on dock at destination is changed to c. i. f. and the provision for title remaining in seller until goods are fully paid for is eliminated.
 

 Under a c. i. f. purchase the buyer takes title at point of origin and pays the cost of insurance and freight
 
 from point of origin.
 
 Appellant’s general manager testified that all their purchases were f. o. b. port of entry, that is, a landed price, and that if appellant had to buy c. i. f. there would be no excuse for agents to stay in business.
 

 Assuming that appellant was the importer, these goods had so come to rest as to be mingled with the mass of proprety in this country when the state tax was levied thereon. This tax could not have the effect of intercepting the import nor did it deny to the import the privilege of becoming incorporated in-the general mass of local property unless such tax payment was made.
 

 That
 
 sale
 
 is the object of importation was made clear by Mr. Chief Justice Marshall in
 
 Brown
 
 v. Maryland,
 
 supra.
 
 Appellant’s general manager testified positively that none of the goods in question were bought for the purpose of resale but were purchased only for the purpose of conversion by manufacturing processes.
 

 The Supreme Court of the United States has held that when imports are once sold by the importer their character as imports is lost.
 

 As stated by Mr. Justice Clifford in
 
 Waring
 
 v.
 
 Mayor of
 
 Mobile, 75 U. S. (8 Wall.), 110, 123, 19 L. Ed., 342, 346:
 

 “Importers selling the imported articles in the original packages are shielded from any such state tax, but the privilege of exemption is not extended to the purchaser, as the merchandise, by the sale and delivery, loses its distinctive character as an import.”
 

 Mr. Justice Clifford distinguished between a sale by
 
 *243
 
 the importer of the imported article and the. breaking up of the original package when he said:
 

 “When the importer sells the imported articles, or otherwise mixes them with the genefal property of the state by breaking up the packages, the state of things changes, as was said by this court in the leading case, as the tax then finds the articles already incorporated with the mass of property by the act of the importer. ’ ’
 

 In discussing the case of
 
 Brown
 
 v.
 
 Maryland, supra,
 
 Mr. Justice Barbour said in the case of
 
 Mayor of City of New York
 
 v.
 
 Miln,
 
 36 U. S. (11 Pet.), 102, 136, 9 L. Ed., 648, 661:
 

 “The great grounds upon which the court put that case were: that sale is the object-of all importation of goods; * * *
 

 In the
 
 License Cases,
 
 46 U. S. (5 How.), 504, 575, 12 L. Ed., 256, 288, Mr. Chief Justice Taney said in respect of importation:
 

 “And while they are in the hands of the importer for sale, in the form and shape in which they were introduced, and in which they are intended to be sold, they may be regarded as merely
 
 in transitu,
 
 and on their way to the distant cities, villages, and .country for which they are destined, and where they are expected to be used and consumed, and for the supply of which they were in truth imported.”
 

 Appellant’s general manager testified as above noted that none of these goods were purchased for the purpose of resale and that the only purpose of the purchases was use as raw material in appellant’s manufacturing processes. When these goods arrived at Xenia, Ohio, appellant placed them in one of its raw-material warehouses where they were held until needed in the course of manufacture. When asked whether there was any definite time during which such goods
 
 *244
 
 were kept in the warehouse, appellant’s general manager answered:
 

 “No; it might be we would need the stuff as soon as it got there and'again we might not; it comes from long distances and we do not carry any more inventory than we need to; it takes three to six months for it to get to us; we attempt to keep a backlog for that; we attempt to run our business with a minimum working inventory, of course.”
 

 The bookkeeping procedure followed by appellant wa's to charge the raw-material account with these goods when received, and credit that account and charge the goods in process account when they were taken from the “warehouse. This procedure was followed for the purpose of cost accounting. Appellant included its raw-material accounts in its assets as disclosed in its balance sheet and other financial statements.
 

 No question is raised as to the amount of the assessments, if the goods are taxable. Under our holding it will be unnecessary to determine whether the goods imported from the Philippine Islands prior to the present war should be treated as coming from a foreign country.
 

 Being of the opinion that the decision of the Board of Tax Appeals' was reasonable and lawful, such decision is hereby affirmed.
 

 Decision affirmed.
 

 Weygandt, C. J., Matthias, Hart and Williams, JJ., concur.
 

 Bell, J., dissents.
 

 Zimmerman, J., not participating.