UNITED STATES PLYWOOD CORPORATION, Appellant, vs. CITY OF ALGOMA, Respondent.

*December 3, 1957—January 7, 1958.*

568

For the appellant there was a brief by *Whyte, Hirsch-boeck, Minahan, Harding & Harland,* attorneys, and *Roger C. Minahan* and *Walter P. Rynkiewicz* of counsel, all of Milwaukee, and oral argument by *Roger C. Minahan.*

For the respondent there was a brief by *S. Knudson,* city attorney, and *Larkin & Blum* of Eau Claire, and oral argument by *Edwin Larkin.*

WINGERT, J.  The question for decision is whether clause 2 of sec. 10 of art. I of the constitution of the United States prohibits the imposition of the city's general property tax on the veneer and lumber imported by the plaintiff from other nations, which are still in the original package or form in which imported, but which are held and needed for the manufacturer's current operational needs.

The constitutional provision is as follows:

"No state shall, without the consent of the congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws; and the net produce of all duties and imposts, laid by any state on imports or exports, shall be for the use of the treasury of the United States; and all such laws shall be subject to the revision and control of the congress. . . ."

The purpose of the provision so far as it relates to imports appears to have been to prevent discrimination against imports by means of taxation, and to prevent the seaport states through whose harbors most imports then came, from taxing the imports of the other states, and thus burdening the commerce of the latter and continuing the commercial warfare between the states which it was one of the main objectives of the framers of the constitution to suppress. See Madison, Debates in the Federal Convention of 1787, August 28, 1787 (Hunt and Scott ed.), 479; *Brown v. Maryland,* 25 U. S. (12 Wheat.) 419, 440, 6 L. Ed. 678.

1. *Established interpretations.* As an original proposition, it might well be doubted that a general property tax not discriminating against imported goods is "an impost or duty on imports." The supreme court of the United States has held that such a tax is within the purview of the constitutional provision, however, and of course we are bound thereby. *Low v. Austin,* 80 U. S. (13 Wall.) 29, 34, 20 L. Ed. 517.[1]

The leading case on the interpretation of the constitutional provision is *Brown v. Maryland,* 25 U. S. (12 Wheat.)

---

[1] A distinguished scholar in this field, the late Prof. Thomas Reed Powell, commenting on the opinions in *Hooven & Allison Co. v. Evatt,* 324 U. S. 652, 65 Sup. Ct. 870, 89 L. Ed. 1252, says, "We could welcome fresh consideration whether property taxes should be regarded as 'imposts' or 'duties.'" 58 Harvard Law Review, 858, 874.

419, in which a state statute requiring importers of foreign goods by bale or package to take out a license and pay a fee of $50 before selling the goods, was held to impose an unconstitutional impost on imports. The extensive opinion by Mr. Chief Justice MARSHALL is one of that jurist's landmark opinions and characteristically went beyond the necessities of the particular case. While the Maryland statute was plainly discriminatory against imports and might have been disposed of on that ground, the chief justice went further and declared in substance that a tax on an imported article in the hands of the importer may be a duty or impost on the import. Referring to the above-stated purpose of the constitutional provision, the chief justice said:

". . . it is plain, that the object would be as completely defeated by a power to tax the article in the hands of the importer *the instant it was landed,* as by a power to tax it while entering the port. . . .

"A duty on imports is a tax on the article which is paid by the consumer. The great importing states would thus levy a tax on the nonimporting states, . . ." (pp. 439, 440.) (Emphasis supplied.)

Conceding that the immunity cannot follow the import indefinitely, and must end somewhere, the chief justice proceeded:

"But, while we admit that sound principles of construction ought to restrain all courts from carrying the words of the prohibition beyond the object the constitution is intended to secure; that there must be a point of time when the prohibition ceases, and the power of the state to tax commences; we cannot admit that this point of time is *the instant that the articles enter the country.* It is, we think, obvious, that this construction would defeat the prohibition." (p. 441.) (Emphasis supplied.)

The chief justice recognized that it would be futile to try to stake out in advance the line where immunity ceases and the states' power to tax attaches.

"The constitutional prohibition on the states to lay a duty on imports, a prohibition which a vast majority of them must feel an interest in preserving, may certainly come in conflict with their acknowledged power to tax persons and property within their territory. . . . Yet the distinction exists, and *must be marked as the cases arise. Till they do arise, it might be premature to state any rule as being universal in its application.*" (p. 441.) (Emphasis supplied.)

Nevertheless, and we must assume tentatively in view of the language just quoted,[2] he suggested the following principle:

"It is sufficient for the present to say, generally, that when the importer has so acted upon the thing imported, that it has become incorporated and mixed up with the mass of property in the country, it has, perhaps, lost its distinctive character as an import, and has become subject to the taxing power of the state; but while remaining the property of the importer, in his warehouse, in the original form or package in which it was imported, a tax upon it is too plainly a duty on imports to escape the prohibition in the constitution." (pp. 441, 442.)

Mr. Chief Justice MARSHALL said much more in the course of his lengthy opinion, by way of argument, illustration, and dictum, and on another branch of the case held that the Maryland statute was also invalid under the commerce clause of the United States constitution (sec. 8, art. I). It is no disparagement of the great chief justice to point out that some of his dicta have not been followed by the court in later cases,[3] as for example, that to the effect

[2] "But he [Marshall] had too much of an instinct for the practical to attempt rigidities which could not possibly bind the future. . . . And so his views were often tentative and suggestive; they conveyed crosscurrents of doctrine and purposed ambiguity." Frankfurter, The Commerce Clause, pp. 44, 45.

[3] ". . . the rule announced in *Brown v. Maryland* has at times been severely criticized . . . and has in some cases been narrowly restricted in its application." BLACK, J., dissenting in *Hooven & Allison Co. v. Evatt,* 324 U. S. 652, 688, 65 Sup. Ct. 870, 89 L. Ed. 1252.

that the principles laid down in *Brown v. Maryland, supra,* would apply equally to importations from a sister state. (25 U. S. (12 Wheat.) at p. 449.) It has later been held consistently that goods brought from another state are not imports within the meaning of sec. 10, art. I of the United States constitution. *Woodruff v. Parham,* 75 U. S. (8 Wall.) 123, 136, 19 L. Ed. 382; *American Steel & Wire Co. v. Speed,* 192 U. S. 500, 520, 24 Sup. Ct. 365, 48 L. Ed. 538. Likewise his original-package doctrine has been repudiated as a criterion of immunity of interstate shipments under the commerce clause, from state taxation. *Sonneborn Bros. v. Cureton,* 262 U. S. 506, 43 Sup. Ct. 643, 67 L. Ed. 1095.

While *Brown v. Maryland, supra,* dealt with a statute prohibiting sale of imported goods by the importer without payment of a license fee, it has been accepted as authority for the broader proposition that the imported goods themselves cannot be taxed while held in the importer's warehouse in the original package, for resale. *Low v. Austin,* 80 U. S. (13 Wall.) 29, 34, 20 L. Ed. 517; *May v. New Orleans,* 178 U. S. 496, 507, 20 Sup. Ct. 976, 44 L. Ed. 1165. Immunity does not depend upon a showing that the tax is in fact discriminatory against imports. *Richfield Oil Corp. v. State Board,* 329 U. S. 69, 76, 67 Sup. Ct. 156, 91 L. Ed. 80. After the merchandise has once been sold by the importer, however, it is taxable as other property, even though remaining in the original package. *Waring v. Mayor,* 75 U. S. (8 Wall.) 110, 122, 19 L. Ed. 342.[4] If the goods are taken out of the original outer package, even before sale, their immunity as "imports" ceases though they are still in smaller original packages. *May v. New Orleans,* 178 U. S. 496, 508, 509, 20 Sup. Ct. 976, 44 L. Ed. 1165.

[4] A pledge of the goods by the importer has been held to terminate their immunity. *Southern Pacific Co. v. Calexico,* 288 Fed. 634, 641.

*Brown v. Maryland, supra,* and most of the earlier cases dealt with attempts to tax, directly or indirectly, goods held for resale. The leading case on state taxation of imports held by the importer for use in manufacture is *Hooven & Allison Co. v. Evatt,* 324 U. S. 652, decided in 1945. In that case it was held that bales of hemp brought from the Philippine Islands and stored in a manufacturer's warehouse in Ohio preliminary to use in the manufacture of cordage were imports in the hands of the importer within the meaning of sec. 10, art. I, United States constitution, and under *Brown v. Maryland, supra,* were immune from state *ad valorem* taxes. (pp. 664–668.) Four justices dissented from that feature of the decision now pertinent, in an opinion by Mr. Justice Black, 324 U. S. at page 686.

In *Hooven & Allison Co. v. Evatt, supra,* the court recognized that the constitutional immunity from state taxation is lost when imported goods are put to the use for which they were imported, or when the original packages in which they were imported are broken. (324 U. S. 652, at pp. 665, 666.) However, the majority was unwilling to terminate the constitutional immunity when the goods reached the factory warehouse in the original package.

"But no opinion of this court has ever said or intimated that imports held by the importer in the original package and before they were subjected to the manufacture for which they were imported, are liable to state taxation." (p. 666.)

On the contrary, the majority affirmed the dictum of Mr. Chief Justice Taney in *License Cases,* 46 U. S. (5 How.) 504, 575, 12 L. Ed. 256.

" 'Indeed, goods imported, while they remain in the hands of the importer, in the form and shape in which they were brought into the country, can in no just sense be regarded as a part of that mass of property in the state usually taxed for the support of state government.' " (324 U. S. at p. 666.)

Nevertheless the majority cautiously limited the decision to the case before it, holding that "It cannot be said that

the fibers were subjected to manufacture when they were placed in petitioner's warehouse in their original package." (p. 667); and expressly saved the question which is before us today.

"And it is unnecessary to decide whether, for purposes of the constitutional immunity, the presence of some fibers in the factory was so essential to current manufacturing requirements that they could be said to have entered the process of manufacture, and hence were already put to the use for which they were imported, before they were removed from the original packages. Even though the inventory of raw material required to be kept on hand to meet the current operational needs of a manufacturing business could be thought to have then entered the manufacturing process, the decision of the Ohio supreme court did not rest on that ground, and the record affords no basis for saying that any part of petitioner's fibers, stored in its warehouse, were required to meet such immediate current needs. Hence we have no occasion to consider that question." *Hooven & Allison Co. v. Evatt,* 324 U. S. 652, 667.

Even this carefully limited decision commanded the support of only five of the justices. The other four dissented in an opinion by Mr. Justice BLACK, who considered that every conceivable relationship the bales of hemp had once borne to the process of importation had ended, and that therefore they were no longer immune as imports; and also pointed out that to accord them constitutional immunity from property taxes would effect a discrimination in favor of foreign as against domestic products. 324 U. S. at pages 686–691.

To sum up the state of the law to date, it appears that imported goods are immune from even nondiscriminatory taxes on general property until sold by the importer, or removed from the original packages in which imported, or put to the use for which acquired, as where placed in process of manufacture. The supreme court has held, by the narrowest of margins, that the mere warehousing of

the goods preliminary to manufacture does not of itself terminate the immunity. The application of the tax to raw materials stored at the importer's factory, which, though still in the original package, are essential to current manufacturing requirements has been expressly left undecided.

2. *The imported lumber.* The lumber in issue was imported from Canada in carloads of individual pieces not bundled or fastened together, and was unloaded and piled in plaintiff's storage yard to facilitate air-drying. We have little difficulty in holding that it had ceased to be immune from the city's general property tax on the assessment date.

The lumber is not protected from taxation by the original-package doctrine, for it was unpackaged, unless the freight car be considered a package, in which case it was removed from the original package when unloaded. The individual sticks of lumber themselves are certainly not packaged or packages in any reasonable sense of the term. *E. J. Stanton & Sons v. County of Los Angeles,* 78 Cal. App. (2d) 181, 188, 177 Pac. (2d) 804, 808; certiorari denied, 332 U. S. 766, 68 Sup. Ct. 73, 92 L. Ed. 351.

Moreover, these pieces of lumber had "entered the process of manufacture," and thus had been "put to the use for which they were imported" (*Hooven & Allison Co. v. Evatt,* 324 U. S. 652, 657, 667) when they were stacked for air-drying, since the drying of the lumber was essential to manufacture, and therefore a first step in the manufacturing process. It was not necessary that the lumber be sawed up in order to place it in process of manufacture. The imported article consisted of a combination of wood and diffused water. Drying separates the wood from the water; sawing separates wood from wood. If the lumber had not been air-dried, it would have had to be kiln-dried for a longer time. Obviously it would be in process of manufacture when drying in an artificially fired kiln. Removal of

water is no less a manufacturing operation when performed out of doors by solar heat.

In so far therefore as the judgment holds the lumber taxable, it must be affirmed.

3. *The imported veneers.* These present a much-closer question. They were still in the original packages in which they were imported, consisting of metal straps around bundles of pieces in most cases, and of wooden crates in others. We assume for present purposes that straps holding bundles of pieces are a package. The veneers had not been subjected to any process to alter their form or chemical composition, but had merely been stored in plaintiff's warehouse to await processing.

If no other facts appeared, and on the assumption that straps around a bundle make a package, we would be constrained to hold the veneers immune from the city's tax on the authority of *Hooven & Allison Co. v. Evatt,* 324 U. S. 652, discussed above, notwithstanding the dissent of the maximum minority from that decision and our own philosophical doubts about its correctness. But there are other facts in the present case which in our opinion are sufficient to distinguish it from that one.

In the instant case it was found as a fact by the trial court, and the finding is not challenged by appellant, that the veneers which were actually taxed were required to be on hand because reasonably necessary to meet plaintiff's current operational needs as a manufacturer. In making that finding, the trial court recognized the practical fact of industrial life, that if a manufacturer is to maintain the continuity of operation that is essential to efficiency and ability to meet competition and thus stay in business, he must at all times maintain on hand at his plant and ready for immediate use, a certain minimum stock pile of raw materials; and from that fact he stated the following conclusion:

"If we accept the premise, as I think we should, that imported raw materials in original packages on hand May 1st, and required to be on hand at that time to meet the immediate or current needs of a manufacturer, have so definitely been taken out of the stream of commerce and have so finally come to rest in his plant, there, to a practical certainty, to lose their identity in a manufactured product, so that it may reasonably be said that it is at least highly improbable that such goods will ever again become the subject of sale and transport in their original packages, then, I think, such raw materials must be regarded for all practical purposes as having irrevocably become a part of the common mass of property within the taxing district and, by virtue of that fact, subject to the state's *ad valorem* personal-property tax."

The trial court's finding brings the present case squarely within the category which was expressly left undecided in *Hooven & Allison Co. v. Evatt,* 324 U. S. 652, 667, quoted at page 667, *supra,* and which we may therefore decide on its merits.

We think the trial court was right in holding that the minimum stock pile of veneers which the manufacturer had to have on hand to meet current requirements was in substance being put to the use for which the raw materials were imported, even though not yet removed from their wrappings or subjected to any physical or chemical change. As to such goods, a rule which would make taxability depend upon the cutting of some metal bands or removal of a wrapping, would be too artificial and mechanical to commend itself. We think it would be equally mechanical, and disregardful of realities, to hold that the manufacturer must inaugurate some process of physical or chemical change before the goods can be considered as put to the use for which they were imported or can be regarded as a part of the mass of property which may be taxed for the support of state government. Foreign commerce, like commerce among the

several states, "is not a technical legal conception, but a practical one, drawn from the course of business." *Swift & Co. v. United States,* 196 U. S. 375, 398, 25 Sup. Ct. 276, 49 L. Ed. 518.

As a practical matter, the minimum current operational requirements of materials which the manufacturer had assembled in his plant for purposes of immediate availability for change in form were in use in and devoted to the manufacturing enterprise, as much as if they were being dried, heated, reshaped, chemically treated, or otherwise changed in form or composition. The purpose for which the veneers were imported was to meet the requirements of a going manufacturing concern; and one of such requirements was the presence of a stock pile equal to minimum current manufacturing requirements. As a practical matter, a manufacturing enterprise cannot be carried on successfully without having current operational requirements of raw materials on hand, especially where it takes a considerable time to get more of the materials after ordering them, any more than it can be carried on without changing their form or composition.[5] The decision under review merely recognizes and gives significance to that fact of industrial life.

We appreciate that there are expressions in the decisions of the United States supreme court which may be cited against the conclusion we have reached; but they must be read in connection with the facts of those cases. No case has been brought to our attention, nor have we found any, in which the facts on which the trial court based its decision in the present case were found to exist and were brought to the attention of the supreme court. In the one case where

---

[5] Respondent's brief puts the proposition picturesquely as follows: "If, when dawn broke over Algoma on the first day of May, 1955, appellant had everything on hand except the imported raw materials necessary to meet current manufacturing requirements, it is reasonable to assume that appellant would have been out of the manufacturing business, at least temporarily."

the argument was made, it was rejected and decision was specifically reserved on the point, because the record did not afford a basis for saying that any part of the imported material was required to meet immediate operational needs. *Hooven & Allison Co. v. Evatt,* 324 U. S. 652, 664, 667.

We think it accords with sound policy, and does no violence to either the purpose or the words of the constitutional provision, to hold that the city may tax the imported veneers in question. We are satisfied that the rule we are adopting preserves the immunity of imports long enough to serve all purposes for which the provision was adopted. The tax is not discriminatory, for it applies alike to all comparable property in the city, regardless of origin. The city has furnished a *quid pro quo,* by extending its police and fire protection to the veneers and lumber as to other property. The tax cannot prejudice foreign commerce, nor afford a means by which seaport or border states can burden the others, or wage commercial warfare against them by taxing their imports, fear of which activity was the motive for adopting the constitutional provision.[6]

On the other hand, to hold that the immunity of imported goods extends to the point claimed by appellant, would work an affirmative discrimination against domestic materials and against manufacturers using domestic materials, and would enable the importing manufacturers to obtain police, fire, and other local protection and benefits without paying for them. While such discrimination also results from some

---

[6] After a penetrating commentary on the majority and minority opinions in *Hooven & Allison Co. v. Evatt, supra,* the late Prof. Thomas Reed Powell said: "The immunity must survive to the extent that neither the goods nor dealings in them are, under any circumstances of time or place or condition, taxed or taxable because of their origin. To say that it must prevail against inclusion in general assessments after arrival or else be destroyed is to take an animistic view of the goods themselves as sacred objects and to forget the commercial aspects of foreign trade and domestic absorption." 58 Harvard Law Review, 858, 875.

applications of the constitutional provision in question by which we are bound, it is nevertheless proper to consider it as a relevant factor in determining whether the immunity should be extended beyond the absolute compulsion of the decisions of the court of last resort.

It is argued that the original-package rule is easy to administer, while it may be difficult to determine when imports have ceased to be imports as a result of becoming part of the stock pile required for current operational needs. We think, however, that the reasons both of constitutional law and policy against further extension of the immunity from state and local taxation outweigh mere problems of administration. Current operational requirements are a fact, not a fancy; and like value, they can be determined by the assessing authority, albeit sometimes with difficulty. The original-package rule itself may present substantial administrative difficulties. See Mr. Justice BLACK's dissent in *Hooven & Allison Co. v. Evatt,* 324 U. S. 652, 691; and *E. J. Stanton & Sons v. County of Los Angeles,* 78 Cal. App. (2d) 181, 186, 177 Pac. (2d) 804, 807. In taxation, absolute certainty cannot be had or expected, as the numerous cases on valuation pointedly illustrate.

*By the Court.*—Judgment affirmed.

BROWN, J.   (*dissenting in part, concurring in part*).   As an original construction of sec. 10, art. I, clause 2, United States constitution, I would have little difficulty in agreeing with the dissenters in *Hooven & Allison Co. v. Evatt* (1945), 324 U. S. 652, 688, 65 Sup. Ct. 870, 89 L. Ed. 1252, 142 Ohio St. 235, 51 N. E. (2d) 723, that when imported goods or raw materials have reached the place where the importer intends to put them to the use for which they were imported and he stores them until he needs them, a nondiscriminatory *ad valorem* tax upon them does not of-

fend the constitution even though the goods or materials in such storage remain in their original package. The difficulty would be even less in agreeing with the majority of this court that part of the goods are taxable.

But I must recognize that this is not an original proposition and the dissenters' view in *Hooven & Allison Co. v. Evatt, supra,* is that of a minority. The majority in that case reiterated the law as it had been established by an unbroken line of decisions beginning with *Brown v. Maryland* (1827), 25 U. S. (12 Wheat.) 419, 6 L. Ed. 678, that the constitution protects imported items against local taxation while they are in their original packages and have not been disposed of or used by the importer. For examples see *Low v. Austin* (1871), 80 U. S. (13 Wall.) 29, 20 L. Ed. 517; *Anglo-Chilean Corp. v. Alabama* (1933), 288 U. S. 218, 53 Sup. Ct. 373, 77 L. Ed. 710, 225 Ala. 141, 142 So. 87, as well as *Hooven & Allison Co. v. Evatt, supra.*

In the latter case, the majority said, page 666:

". . . no opinion of this court has ever said or intimated that imports held by the importer in the original package and before they were subjected to the manufacture for which they were imported, are liable to state taxation."

And, further, page 667:

"It cannot be said that the fibers were subjected to manufacture when they were placed in petitioner's warehouse in their original packages."

The law, as I read it, is well settled by the decisions of the supreme court of the United States that, until put to use or sold or otherwise disposed of by the importer, materials in their original packages are not subject to a state tax. The veneers now in question satisfy all these conditions of immunity; and, like the fibers in *Hooven & Allison, supra,* have not been subjected to manufacture. It is our proper province

to apply that oft-stated law. It is not our province to modify it or to declare exceptions to it.

The argument, unsupported by the record, was made by the tax collector in *Hooven & Allison Co. v. Evatt, supra,* that some of the materials were so essential to current manufacturing requirements that they might be deemed to have entered the manufacturing process and so were taxable, as already put to use although still in their original packages. In reply to this the court said (p. 667) there was no necessity and no occasion to consider that question. I cannot agree with the majority of our court that the form of the rejection of the argument changed the established law. The decision, in fact, *refused* to change it. Therefore I consider that this court is still bound to apply the law as it has been so often declared and as it remained when the court got through with *Hooven & Allison Co. v. Evatt, supra.* We, as a state court, have not been invited, nor are we authorized, to create an exception to the principle so often stated by the United States supreme court, that in the original package, unsold and unused imported materials are tax exempt. It is not for us to say that their immunity is lost when the day of use draws near. The United States supreme court was asked to make that change in the law. It would not. We should not.

Therefore, I think we must reverse, as to the veneers.

Respecting the lumber, the learned trial court found that the method of piling it had the dominant purpose of readying it for use. That finding makes it possible, I think, to agree that the manufacturing process had begun when the pile was constructed. Therefore I am able to concur in the decision that the lumber lost its status as an import and is taxable, though the ground that half of it is taxable because of current manufacturing needs is untenable.

I am authorized to say that Mr. Justice Currie and Mr Justice Steinle concur in what is said here.