This is an appeal from certain assessments placed on personal property of the plaintiff which it claims was not legally taxable and for reimbursement from the defendant city of the amounts paid thereon.
The plaintiff is a wholesale lumber company incorporated in the state of New York with a principal office and place of business in Poughkeepsie, New York. It maintains a branch office in New Haven in space leased on part of the premises of the New Haven Terminal company office building, and it pays a monthly rent therefor.
The plaintiff uses an area of approximately two acres on the premises of the New Haven Terminal, Inc., which maintains a warehouse and dock on its premises in New Haven harbor. The plaintiff maintains six terminals along the Atlantic seaboard and brings in lumber from the west coast of the United States in standard cargo units. Each cargo unit is bound by wire bands. The lumber varies in length and usually comes in widths of three to five feet. *Page 142 
The plaintiff brings to New Haven, almost entirely by boat, cargo units of lumber which are taken off the boats by New Haven Terminal, which then moves it to a designated area of somewhat over two acres of the terminal's yard where the plaintiff stores its lumber. The local office of the plaintiff handles sales of lumber to lumber dealers in Connecticut and Massachusetts. It is headed by the office manager and has two secretaries employed there. They keep books and make out shipping tickets for sales and shipments of lumber from the New Haven operation. The local office also prepares and sends out invoices to the customer-purchaser after a load of lumber has been delivered and signed for. The books of the local office are audited here once a year. In the year 1966, its gross business of sales out of the New Haven office represented a sale of 28 million feet of lumber.
The ownership title to the lumber, while it is stored in the allotted storage area, is in the plaintiff. It pays New Haven Terminal for its fees in unloading the lumber from the boat onto the terminal's dock and for transporting it to the storage area. For the storage of its lumber in this designated area, the plaintiff pays the terminal a flat rate fee per thousand board feet measure, which is the standard unit of price. This fee is paid only once and is based on the bill of lading receipt from each ship which brings in lumber to New Haven Terminal and shows the quantity of lumber brought in to the dock in that particular shipment. The bill of lading from the ship will have the gross receipt of the quantity of lumber, and New Haven Terminal makes a charge to the plaintiff against that gross receipt. No other fee for the storage of the lumber is paid to the terminal, regardless of the length of time the lumber received remains in storage. And the terminal does not issue a warehouse receipt or similar document *Page 143 
to the plaintiff. The terminal keeps no inventory control record of any kind, nor does it perform any inventory control function relative to the lumber received and stored. The plaintiff owns no mills and does not perform any cutting of logs or manufacturing of lumber on the west coast. It simply buys lumber in cargo units for shipment to its terminals on the east coast, including New Haven.
The New Haven office of the plaintiff receives orders from customers either directly or through the plaintiff's salesmen. It thereupon acts to fill these orders, and the lumber is transported to these customers either by contract carrier or in its customers' own trucks. Approximately .339 percent of these cargo units are broken up by the plaintiff, by design, to meet special requirements of customers.
The defendant sought to tax tangible personal property of the plaintiff under the provisions of the state statutes with reference to assessment of property taxes on corporations. The plaintiff claims that these taxes were improperly laid on the grand lists of June 1, 1967, and October 1, 1967, and were paid under protest.
The first claim of the plaintiff is that this lumber is exempt from local property taxation under the specific provisions of § 12-95a of the General Statutes, which provides in relevant part: "(b) Merchandise shipped into the state and placed in storage, in the name of or for the account of the producer or manufacturer, in the original package, in a public commercial storage warehouse or on a public wharf shall, while so in storage, be considered in transit and not subject to taxation." As the defendant recognizes in its brief, the crucial issue involved is whether the plaintiff comes within the specific provision of this claimed exemption. It admittedly is not a manufacturer of this lumber, but it claims *Page 144 
that it does come within the scope of the term "producer." Regrettably the statute in issue does not define the term "producer." The defendant seeks to resolve this issue by attempting to draw inferences from the legislative intent. The plaintiff has annexed to its brief a copy of the eleventh biennial report of the legislative council of Connecticut (1965) concerning the taxation of goods in transit. The plaintiff seeks to infer from this report that the purpose of the enactment of § 12-95a was to remove an existing inequity against resident owners who receive goods in interstate commerce and while such goods are stored in public warehouses. It is significant, however, that this report states (p. 88): "The proposal would require that the goods be in the actual custody of a qualified warehouseman and beyond the owner's control." It is further stated that the purpose of the proposal is to "enhance Connecticut's competitive position as a warehousing state. Neither New York nor New Jersey assesses a personal property tax against goods in public storage."
But this report and the record of the proceedings in the house and senate preceding the enactment of this bill do not furnish an adequate explanation of its purpose. As set out in the remarks preceding passage, the only reference to its purpose is stated generally: that it would "exempt from property taxation goods, wares and merchandise in transit in commercial storage warehouses. This will encourage industry to do business in this State." It appears to have been passed in the rush of the closing days of the 1965 legislature. It passed the house on June 5 and was discussed in the senate on the closing day of the session, June 9. In the senate there was an issue as to whether an amendment to the bill should be taken up, but this was turned down in view of lack of time for discussion. *Page 145 
This requires, therefore, that we seek a rational interpretation elsewhere. Webster's Third New International Dictionary defines the term "producer" as follows: "1: one that produces, brings forth, or generates . . . 2: one that grows agricultural products or manufactures crude materials into articles of use . . . ."
The plaintiff has cited in its brief the case ofTennessee Burley Tobacco Growers Assn. v. CommodityCredit Assn., 350 F.2d 34, 41. This case refers to the second dictionary definition of "producer" as set out above. Although the factual situation in this case is dissimilar, the holding of the court therein is quite pertinent. The plaintiff was a cooperative of tobacco growers and claims that it also should be classified as a "producer" to come within the terms of the particular statute therein involved, the Agricultural Act of 1949, 63 Stat. 1055, as amended, 7 U.S.C. § 1428. The decision reads (p. 41): "The Association as an entity does not own or operate farms and does not produce tobacco. It only receives tobacco from growers that do produce it. We hold that the term `producer' is used in the statute in its ordinary sense, and is intended to apply to persons or organizations that grow tobacco, such as the owner of a farm, a tenant on a farm, a sharecropper or similar person. The term does not encompass an incorporated organization such as the Association here involved which does not grow crops, but merely receives them from producers for handling." In the instant case, the plaintiff admits that it in no way participates in the production or cutting of the lumber involved. It is strictly a wholesale lumber company.
It is regrettable that the term "producer" was not specifically defined in the enactment of the statute in question. In most states where exemptions of *Page 146 
this type are granted, definitions of terms are usually included. See Commissioner of Corporations Taxation v. Assessors, 321 Mass. 90. This court, nonetheless, is bound by the provisions of the statute as enacted. The plaintiff seeks to have this court give the term "producer" a broad, general, all encompassing, meaning which would include the plaintiff as a wholesale lumber company. The statute in issue exempts from taxation a certain category of taxpayer who otherwise would be subject to taxation on personal property within the confines and jurisdiction of a particular municipality. But such a tax exemption statute must be strictly construed.Preservation Society of Newport County v.Assessor of Taxes, 247 A.2d 430, 434 (R.I.); MethodistOld Peoples Home v. Korzen, 39 Ill.2d 149. "It is true that taxation is the general rule, and exemptions are to be strictly construed." Children's HospitalMedical Center v. Board of Assessors,353 Mass. 35. And, as brought out in Board ofAssessors v. Pickwick Ltd., 351 Mass. 621, 623, "[a]t the outset it should be noted that an exemption from taxation is a matter of legislative grace and may be recognized only when the taxpayer shows that he comes within either the express words or the necessary implication of some statute conferring this privilege upon him."
The testimony of the plaintiff's agent and manager of its New Haven office warrants the reasonable inference that the plaintiff was actually conducting business operations through this New Haven office to serve its customers in Connecticut and Massachusetts. The inference must be drawn that it, in effect, was renting an area of approximately two acres from New Haven Terminal on which it stored the lumber shipped from the west coast. It accepted orders directly from customers and filled these orders. The fact that New Haven Terminal *Page 147 
unloaded the lumber to the dock and then transported it to the storage area and in turn unloaded it there does not change the essential factual situation presented here. From that point on this lumber was at all times under the control of the plaintiff.
For the reasons hereinabove set out, this court cannot find that the plaintiff has sustained its burden of showing that it comes within the classification of "producer" as claimed by it, so as to entitle it to an exemption from this tax.
This holding is limited solely to the issue of lumber imported from the west coast of the United States. It does not address itself to the issue of lumber imported from a foreign country, including Canada, in original packages. The law appears to be clear that imports from a foreign country which remain in their original package are not subject to taxation. As the case of E. J. Stanton Sons v.County of Los Angeles, 78 Cal.App.2d 181, 189, points out, "[i]f the importer `otherwise mixes them with the general property of the state by breaking up his packages, the tax finds the article already incorporated with the mass of property by the act of the importer. He has used the privilege he had purchased, and has himself mixed them up with the common mass, and the law may treat them as it finds them.'" The court therein refers to the early leading case of Brown v. Maryland, 25 U.S. (12 Wheat.) 419. See Simon v. County of LosAngeles, 141 Cal.App.2d 74; Florida GreenheartCorporation v. Gantier, 172 So.2d 589 (Fla.);United States Plywood Corporation v. Algoma,2 Wis.2d 567. The court must point out that "[i]f the goods are taken out of the original outer package, even before sale, their immunity as `imports' ceases though they are still in smaller original packages.May v. New Orleans, 178 U.S. 496, 508, 509 *Page 148 
. . ."; United States Plywood Corporation v. Algoma,
supra, 573.
The court concludes, therefore, that lumber imported in cargo units by the plaintiff from a foreign country, in this case Canada, cannot be taxed while it is held in the original package for resale. This holding, however, cannot avail the plaintiff in this particular action. The burden of proving that the assessment was erroneous was on the plaintiff.Stone v. Sullivan, 154 Conn. 498, 501. This included the production of evidence as to the claimed quantity of lumber imported from British Columbia, Canada, in cargo units and remaining in the original package. There was no evidence whatever introduced as to quantity, the only testimony being that of the New Haven manager of the plaintiff, who testified at the conclusion of his direct examination, in reply to the question, "Where does this lumber come from?" that "It comes from the West Coast of the United States and Vancouver, British Columbia."
There is no dispute between the parties that unit cargo packages, whether imported from the west coast or from a foreign country, if broken by design for resale purposes, subject the lumber sold from such packages to taxation by the defendant. In the instant case, there was evidence that approximately .339 percent of the total quantity of lumber brought into New Haven by the plaintiff during the years in issue here was sold from packages broken by design and was clearly taxable by the defendant.
In conclusion, therefore, the court must find in favor of the defendant on the issue whether the plaintiff is a "producer" coming within the meaning of, and entitled to, the exemption set forth in § 12-95a (b) of the General Statutes. Although the court holds as a matter of law that lumber imported *Page 149 
into New Haven in unit packages from a foreign country is not subject to taxation while the lumber remains in the original packages, the failure of the plaintiff to present any evidence as to quantity impels the court to hold in favor of the defendant on this issue also, since it cannot go beyond the evidence submitted.
 Judgment may enter accordingly for the defendant.