KNIGHT NEWSPAPERS, INC., *v.* CITY OF DETROIT

1. TAXATION—PROPERTY TAX—CONSTITUTIONAL LAW—IMPORTS.
   Newsprint imported from Canada by taxpayer newspaper and held in storage is not subject to property taxes levied by a city or county so long as it remains in its original package and is not essential for current operational needs (US Const, art 1, § 10[2]).

2. TAXATION — PROPERTY TAX — CONSTITUTIONAL LAW — IMPORTS — CURRENT OPERATIONAL NEEDS.
   The amount of taxpayer's imported newsprint that is essential for current operational needs, and is thus subject to the as-

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2]   51 Am Jur, Taxation §§ 413, 419.

sessment of property taxes, is to be determined by multiplying the average number of tons of newsprint used in a day by the number of days it takes to replenish taxpayer's stock (US Const, art 1, § 10[2]).

Appeal from Wayne, George T. Martin, J. Submitted Division 1 January 15, 1969, at Detroit. (Docket No. 4,821.) Decided March 24, 1969.

Complaint by Knight Newspapers, Inc., an Ohio corporation, against the city of Detroit, a municipal corporation, and Wayne County, a municipal corporation, to recover certain property taxes paid under protest. Judgment for plaintiff. Defendants appeal. Remanded for further proceedings.

*Kenneth Murray* and *Brownson Murray,* for plaintiff.

*Robert Reese,* Corporation Counsel, *Julius C. Pliskow* and *Arthur Yim,* Assistants Corporation Counsel, *William L. Cahalan,* Prosecuting Attorney, and *Aloysius J. Suchy* and *William F. Koney,* Assistant Prosecuting Attorneys, for defendants.

*Amicus Curiae:* The Evening News Association (by *Butzel, Eaman, Long, Gust & Kennedy* [*Philip T. Van Zile, II,* of counsel]).

BEFORE: FITZGERALD, P. J., and R. B. BURNS and BRONSON, JJ.

R. B. BURNS, J. Plaintiff's newspapers are printed on paper stock called newsprint, 99% of which is imported from Canada. On December 31, 1964, tax day for the assessment of 1965 personal property taxes, plaintiff had on hand in the original package

2,304 tons of imported newsprint. Defendant assessed the entire stock of newsprint. The Michigan State tax commission affirmed this assessment. Plaintiff claimed that 1,178 tons of the newsprint were exempt from taxation[1] and paid the tax on this amount under protest. Plaintiff instituted the present suit to recover the amount paid under protest.[2] Defendants in 1960 had arbitrarily set a standard of 15 days' supply of newsprint as the amount committed to current operating needs of all newspapers in its area. The trial court found that newsprint taken directly from freight cars to the plant was used as much as possible by the plaintiff in its daily operation. During the first 15 days of January, 1965, the plaintiff used 2,186 tons of newsprint; 1,712 tons were transported directly from freight cars to the plant and 474 tons were used from storage. The trial court held that only 474 tons were committed to current operational needs and were taxable.

Defendants raise 2 procedural issues in their claim of appeal, but all parties agreed at the time of oral argument that a decision on the merits is needed in the instant case. Therefore, we will not discuss the procedural issues but will confine this opinion to the merits.

At first glance one might question how a general personal property tax levied indiscriminately on all personal property can be classified as a tax on imports. It was settled in *Low* v. *Austin* (1871), 80 US (13 Wall) 29 (20 L Ed 517), that a general property tax on imports is prohibited by the Constitution.

---

[1] US Const, art 1, § 10(2).

[2] MCLA § 211.53 (Stat Ann 1969 Cum Supp § 7.97).

US Const, art 1, § 10(2) states:

"No State shall, without the consent of Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws."

In *Brown* v. *Maryland* (1827), 25 US (12 Wheat) 419 (6 L Ed 678), Chief Justice Marshall held that the State of Maryland could not require importers of foreign goods to secure a license in order to sell the goods. He recognized that at some point of time the prohibition must cease and enunciated the principle that States could not tax imported goods as long as they remained in the original package prior to sale.

*Hooven & Allison Company* v. *Evatt, Tax Com'r* (1945), 324 US 652 (65 S Ct 870, 89 L Ed 1252), involved imports for use in manufacturing. The "use" doctrine was born. The Court held that the immunity on imported goods continued until the goods were removed from their original package or put to the use for which they were imported.

*Youngstown Sheet & Tube Company* v. *Bowers, Tax Com'r* (1959), 358 US 534 (79 S Ct 383, 3 L Ed 2d 490), presented the issue of whether the presence of imported goods at the factory site was so essential to current operating requirements that it could be said the goods had entered the process of manufacturing and, therefore, had been put to the use for which they were imported. *Youngstown* was a consolidation of 2 cases: *Youngstown Sheet & Tube Company* v. *Bowers* (1957), 166 Ohio St 122 (140 NE 2d 313), and *United States Plywood Corp.* v. *City of Algoma* (1958), 2 Wis 2d 567 (87 NW2d 481). Youngstown imported ore from several foreign countries and stored the ore in segregated piles in its ore yard. The daily manufacturing needs were

taken from these piles. The Court held that under the facts of the case the ore had entered the manufacturing process and had been put to the use for which it was imported. United States Plywood manufactured veneered wood products. It imported both green lumber and veneers. The green lumber was stacked in the open in such a way as to allow air to circulate through the stacks to facilitate drying before the lumber was placed in the kiln. The veneers were stacked in bundles, separated as to species, for use in the day-to-day operation of the plant. Again the Court held the products had been put to the use for which they were imported and had lost immunity. The Court in the *Youngstown Case* was particular in recognizing the distinction between the *Youngstown* and *Hooven Cases*, stating (p 544):

"Unlike *Hooven*, these are not cases of mere storage in a warehouse of imported materials *intended for eventual use in manufacturing* but not found to have been essential to current operational needs." (Emphasis supplied.)

In the present case we must draw the distinction between the newsprint intended for eventual use and the newsprint essential for current operational needs. In *City and County of Denver v. Denver Publishing Company* (1963), 153 Colo 539 (387 P2d 48), the Supreme Court of Colorado recognized the distinction between newsprint for current operational needs and the stock on hand dictated by good business management. The Court upheld the trial judge's formula which used the number of days needed by the newspaper to replenish its stock, multiplied by the daily average amount of newsprint used by the company, to determine current operational needs. The rule and formula used in the *Denver Case* are realistic and are adopted. They

recognize the distinction between good business practice and the newsprint essential to production.

This case is remanded to the trial court to determine the number of days needed by Knight to replenish its newsprint and the daily average amount of newsprint used. By applying the Denver formula the result will equal current operational needs upon which the tax will attach.

No costs, neither party prevailing in full.

All concurred.