· Argued June 4, affirmed September 10, 1969

## BEALL PIPE AND TANK CORPORATION,
*Respondent, v.* STATE TAX COMMISSION,
*Appellant.*

458 P2d 420

*Donald C. Seymour,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Robert Y. Thornton, Attorney General, and Alfred B. Thomas, Assistant Attorney General, Salem.

*Eugene E. Feltz*, Portland, argued the cause for respondent. With him on the brief were Casey, Palmer & Feltz, Portland.

Before McALLISTER, SLOAN, O'CONNELL, GOODWIN, and DENECKE, Justices.

PER CURIAM.

In a tax appeal seeking the proper balance between a state's power to tax and the federal constitution's prohibition against the taxation of "imports," the Tax Court rejected the Tax Commission's proposal that Oregon follow the "California" rule, and adopted instead a formula that had found approval in Ohio and Colorado cases. *Beall Pipe & Tank Corporation v. Tax Commission*, 3 OTR 229.

The Commission earlier had ruled that a pipe manufacturer's entire inventory of steel on hand on January 1, 1967, was subject to ad valorem property taxes under ORS 307.030 notwithstanding the agreed fact that a substantial portion of the inventory had recently been imported by the taxpayer from Japan. The United States Constitution, Art I, § 10, provides: "No State shall * * * lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing it's [sic] inspection laws * * *."

The taxpayer appealed the Commission's ruling to the Tax Court, and the Commission now has appealed the Tax Court's decision to this court. Because we concur in the opinion of the Tax Court, and because its opinions are not as widely available in printed form as are the opinions of this court, we adopt the Tax Court's opinion as our own and, save for its introductory paragraph, set it out below:

"Plaintiff, a manufacturer of welded steel pipe,

both imports coil steel from Japan and purchases steel from domestic companies in the United States. On January 1, 1967 the plaintiff had an inventory of Japanese coil steel valued at $493,991.00. The imported wire is bound in a coil and kept in a storage area near plaintiff's main assembly building but separate from the domestic steel. Approximately 12 coils or $40,000 worth of imported steel are kept at all times in the assembly building behind the tube mill so that the operation of the tube mill will not be interrupted.

"It requires approximately three months from the time an order is placed by plaintiff with the Japanese manufacturer until the shipment arrives from Japan. The inventory of Japanese steel on hand on January 1, 1967, constituted a ten-month supply. Plaintiff used ten percent of this imported steel inventory in January, six percent in February and 10.8 percent in March, 1967. Under normal circumstances an order for plaintiff's steel products can be filled within two weeks' time.

"The plaintiff is primarily engaged in manufacturing steel products but it has occasionally sold some of its steel inventory to other companies.

"The rule concerning the ability of states to tax imports was first announced in *Brown v. Maryland*, 12 Wheat 419, 6 L ed 678 (1827). Chief Justice Marshall remarked that the constitutional prohibition on the states to tax imports might come into conflict with the power of the states to tax property within the state jurisdiction and said:

" 'It is sufficient for the present to say, generally, that when the importer has so acted upon the thing imported that it has become incorporated and mixed up with the mass of property in the country, it has, perhaps, lost its distinctive character as an

import, and has become subject to the taxing power of the state; but while remaining the property of the importer, in his warehouse, in the original form or package in which it was imported, a tax upon it is too plainly a duty on imports to escape the prohibition in the constitution.'

"In *Hooven & Allison Co. v. Evatt*, 324 US 652, 65 S Ct 870, 89 L ed 1252 (1944), the United States Supreme Court, through Chief Justice Stone, interpreted the words of Chief Justice Marshall to mean that '* * * things imported are imports entitled to the immunity conferred by the Constitution; that the immunity survives their arrival in the country and continues until they are sold, removed from the original package, *or put to the use for which they are imported.* [Citing cases.]' 89 L ed 1259. (Emphasis supplied.) The Supreme Court left undecided the question of whether the imported goods which were to be used in manufacturing, some of which had been placed in the taxpayer's factory, were 'so essential to current manufacturing requirements that they could be said to have entered the process of manufacture and hence were already put to the use for which they were imported.'

"In *Youngstown Sheet & Tube Co. v. Bowers* and *United States Plywood Corp. v. City of Algoma*, (decided together) 358 US 534, 79 S Ct 383, 3 L ed 2d 490 (1959), the United States Supreme Court was presented with the question of whether imported goods that were essential to current manufacturing requirements had lost their character as imports. In *Youngstown* the court found that the stipulated facts showed that the imported iron ore was used and irrevocably committed to supply, and was actually supplying the daily requirements of the plant. In the *United States Plywood* case the city assessor taxed only one-half of

the taxpayer's inventory of imported lumber and veneer on the basis that that amount was needed to meet the current operating needs of the manufacturer. The trial court found that the inventory taxed by the assessor had been irrevocably committed to manufacturing and was needed to meet the current operational needs of the manufacturer. Because of the stipulation in *Youngstown* and the findings in *United States Plywood* the Supreme Court held in both instances that the imported goods had lost their character as imports and were taxable by the local taxing authority.

"The Supreme Court of Colorado in *City and County of Denver v. Denver Publishing Co.*, 153 Col 396, 387 P2d 48 (1963), held that *Youngstown* 'does not stand for the proposition that foreign goods stored for eventual use in manufacturing are automatically to be equated with goods required to be kept on hand to meet "current operational needs." ' In deciding what portion of imported newsprint was taxable as an import the court approved a formula for finding current operation needs of the publisher by using the length of time required to replenish the supply from its source in Canada. The court found the publisher used 60 tons of newsprint per day, and as it took six days for shipment, allowed 360 tons for 'current operational needs.'

"The Supreme Court of Ohio has followed the decision in the *Denver Publishing Co.* case and is now firmly committed to the rule that only the amount of the importer's imported and stored material required for current needs is taxable. *ORR Felt & Blanket Co. v. Schneider*, 3 Ohio St2d 14, 209 NE2d 150; *Wheeling Steel Corp. v. Porterfield*, 14 Ohio St2d 85, 236 NE2d 652 (1968). The court in both cases followed the formula used by Colorado for determining

current operational needs as the length of time it takes to secure an additional supply from the foreign source.

"California has rejected completely the formula' used by the Ohio and Colorado courts for determining current operational needs of an importer-manufacturer. In *Virtue Bros. v. County of Los Angeles*, 239 Cal App 2d 220, 48 Cal Rptr 550, *cert. denied* 385 US 820 (1966), the California court held that the total inventory of various importer-manufacturers was taxable. In doing so the court summarily rejected the formula used by Colorado and Ohio by flatly stating: 'We think that the formula applied by the Colorado and Ohio courts is defective.' The court also interpreted *Youngstown* to require 'that the full inventory in the possession of plaintiffs, committed to the purpose of manufacture * * * is subject to tax.' In rejecting the current operational needs test the California court is, in effect, holding that all imported products to be used in manufacturing are subject to taxation. This is contrary to the decision of the United States Supreme Court in *Hooven* and *Youngstown* where the result of both decisions appears to be that things imported are immune from taxation unless they are part of the current operational needs of the manufacturer.

■ The formula used by Colorado and Ohio to determine current operational needs on the basis of the length of time required to secure an additional supply from the foreign source is reasonable. In the instant case it is clear that only a portion of plaintiff's inventory on hand on January 1, 1967, was needed for plaintiff's current operational needs. Two shiploads of steel happened to arrive three days before the assessment date and altogether this amounted to about ten months' supply of Japanese steel. The testimony

showed that it required about 90 days to secure delivery of an order from the mills in Japan. There was also testimony that the plaintiffs used a total of 26.8% of the January 1 inventory during the first 90 days of 1967. Applying the formula used by the Colorado and Ohio courts, 26.8% of $493,991 or $132,389.59 had been committed to plaintiff's current manufacturing needs and is taxable and the balance of $361,601.41 is immune from taxation as an import.

"\* \* \* \* \*"

The decree of the Tax Court is affirmed.