PRODUCTION STEEL STRIP CORPORATION v DETROIT

Opinion of the Court

1. Taxation—Personal Property—Imports—Current Operational Needs.

Once imported goods become part of the "current operational needs" of a business, they lose their constitutional immunity to local taxation; "current operational needs" are determined by multiplying the number of days needed to replenish the business's stock by the average quantity of goods which is used daily (US Const, Art I, § 10).

2. Taxation—Personal Property—Current Operational Needs—Replenishment Time.

The replenishment time that is used for the purpose of assessing a local property tax on the "current operational needs" of a business is to be computed as the actual replenishment time immediately after the tax day.

3. Taxation—Personal Property—Tax Day—Replenishment Time.

The inventory of a business on hand on the tax day is taxable, foreign imports being taxable only to the extent that they are current operational needs on the tax day, and the replenishment time used to determine current operational needs is that which exists on the tax day, taking into account the methods of transportation that are available on that day (MCLA 211.2).

4. Taxation—Personal Property—Imports—Steel—Replenishment Time.

The replenishment time for computing current operational needs of hot rolled steel coils imported from foreign sources, for purposes of the levy of a personal property tax on the steel, is 14 days in a case where the steel can be replaced in 2 weeks from domestic sources and in 2-1/2 months from foreign sources, but where because the Great Lakes navigation season

References for Points in Headnotes

[1] 51 Am Jur, Taxation § 591.
[2] 51 Am Jur, Taxation § 419.
[3–6] 51 Am Jur, Taxation § 103.

was closed on the tax day, replenishment time was 14 days on the tax day (MCLA 211.2).

5. TAXATION—PERSONAL PROPERTY—ASSESSMENT—TAX DAY.

The mere fact that the tax assessor may examine property prior to or after the tax day for assessment purposes does not affect the time that the assessment of current operational needs is to be made and regardless of the time the assessor looks to determine the amount of inventory a taxpayer has on hand, it is necessary for the assessor to determine current operational needs as of the tax day by computing the replenishment time as of that day (MCLA 211.2, 211.13).

DISSENT BY DANHOF, J.

6. TAXATION—PERSONAL PROPERTY—REPLENISHMENT TIME.

It is highly artificial to say that the computation of the replenishment time used in determining the current operational needs of a taxpayer's business for imported steel should depend on the hypothetical replenishment time on the tax day, rather than the actual replenishment time of the goods in question established by the practice of the taxpayer in stockpiling imported steel sufficient for its needs during the time navigation is closed on the route by which it gets its imported steel (MCLA 211.2).

Appeal from Wayne, Neal Fitzgerald, J. Submitted Division 1 December 15, 1971, at Detroit. (Docket Nos. 11047, 11048.) Decided September 26, 1972. Leave to appeal granted, 388 Mich 808.

Complaint by Production Steel Strip Corporation against the City of Detroit, the Board of Education of the City of Detroit, Wayne County, the Treasurer of the City of Detroit, and the Treasurer of Wayne County for refund of a portion of personal property taxes. Judgment for plaintiff. Defendants appeal. Affirmed.

*Shapero, Shapero & Cohn,* for plaintiff.

*Michael M. Glusac,* Corporation Counsel, and *Julius C. Pliskow* and *Lawrence W. Morgan,* As-

sistants Corporation Counsel, for defendant City of
Detroit and its City Treasurer.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William L. Cahalan,*
Prosecuting Attorney, and *Aloysius J. Suchy* and
*William F. Koney,* Assistant Prosecuting Attor-
neys, for defendants County of Wayne and its
County Treasurer.

*Miller, Canfield, Paddock & Stone* (by *William
O. Hochkammer),* for defendant Board of Educa-
tion of the City of Detroit.

Before: HOLBROOK P. J., and T. M. BURNS and
DANHOF, JJ.

T. M. BURNS, J. Defendants, City of Detroit,
County of Wayne, and the Board of Education for
the City of Detroit, together with their respective
treasurers, appeal from a judgment in favor of the
plaintiff, Production Steel Strip Corporation (here-
inafter referred to as taxpayer), in an action for a
refund of a portion of its personal property taxes
which it paid under protest for 1966 and 1967.

Taxpayer, as part of its business, purchases
certain hot rolled steel coils. Some of the coil steel
is purchased domestically, some is purchased from
foreign sources. The domestic and foreign steel is
identical and interchangeable.

Defendant taxing authorities levy a property tax
on inventories. Thus, any domestic steel in taxpay-
er's inventory is subject to said property tax. As to
steel purchased in foreign countries, however, it is
not so simple due to the prohibition on the taxing
of imports by a state contained in US Const, Art I,
§ 10.[1]

---

[1] "No state shall, without the consent of Congress, lay any imposts

Imported goods are not immune forever from such taxes, however. In *Knight Newspapers, Inc v Detroit,* 16 Mich App 438, 442 (1969), this Court held that once imported goods become part of the "current operational needs" of the business in question, the immunity is lost and local taxes may be levied thereon. The current operational needs are determined in the following manner:

"In *City and County of Denver v Denver Publishing Company,* 153 Colo 539; 387 P2d 48 (1963), the Supreme Court of Colorado recognized the distinction between newsprint for current operational needs and the stock on hand dictated by good business management. The Court upheld the trial judge's formula which used the number of days needed by the newspaper to replenish its stock, multiplied by the daily average amount of newsprint used by the company to determine current operational needs. The rule and formula in the *Denver* case are realistic and are adopted."

Thus, in most cases applying the above formula, the assessors need only multiply the number of days needed to replenish a taxpayer's stock by the quantity of goods which are used daily on the average to determine how much of the goods have lost their immunity for tax purposes.

In the instant case, however, the taxpayer purchases from both domestic and foreign sources. Delivery from domestic sources takes two weeks. Delivery from foreign sources takes 2-1/2 months. Therefore, the quantity of steel subject to the property tax depends upon which period of time is used to multiply by the taxpayer's daily needs.

The taxpayer argues that his daily needs should be multiplied by 14 days, since all of its inventory

or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws."

can be replenished in that length of time. The taxing authorities argue, however, that the longer period should be used which would result, of course, in a greater quantity of steel upon which the taxing authorities could levy their property taxes.

Therefore the question we are called upon to decide is whether or not replenishment time for the application of the "current operational needs" formula is to be measured by the replenishment time from foreign sources or by the actual replenishment time immediately after the tax date.

The trial court held that replenishment time is to be computed immediately after the tax date. We agree.

Although the cases relied upon by the taxing authorities applied the Colorado's "current operational needs" formula in terms of the replenishment time from a foreign source,[2] those cases do not stand for the proposition that the definition of replenishment time is the replenishment time from a foreign source. A foreign source was the only source involved in those cases. Those cases did not touch upon the question presented in the instant case, namely, whether the foreign source in the actual source replenishment time was to be used where the taxpayer obtains goods from both foreign and domestic sources. Therefore, the cases cited by the taxing authorities are distinguishable from the present case and are not controlling on this issue.

Moreover, MCLA 211.2; MSA 7.2 provided:

"The taxable status of persons and real and personal

---

[2] *Beall Pipe & Tank Corp v State Tax Commission,* 254 Or 195; 458 P2d 420 (1969); *Knight Newspapers, Inc v Detroit,* 16 Mich App 438 (1969); *Orr Felt & Blanket Co v Schneider,* 3 Ohio St 2d 14; 209 NE2d 150 (1965).

property shall be determined as of each December 31, which shall be deemed the tax day for the immediately succeeding calendar year, which is also the tax year, any provisions in the charter of any city or village to the contrary notwithstanding."

We interpret this provision to mean that the inventory on hand on the tax date is taxable. However, an inventory of foreign imports is not taxable because of the import immunity clause of the United States Constitution[3] unless such inventory can be classified within the realm of current operational needs on the tax date. It follows then that in order to determine what are a taxpayer's current operational needs on the tax date, it is necessary to compute what the replenishment time is as of that date.

Here, since the Great Lakes navigation season was closed, the taxpayer's replenishment time was 14 days on the tax date. Therefore, 14 days was the correct replenishment time to be used in computing the taxpayer's current operational needs.

In addition, the taxing authorities contend that since MCLA 211.13; MSA 7.13 (average monthly inventory provision) and MCLA 211.2; MSA 7.2[4]

---

[3] US Const, Art I, § 10.

[4] MCLA 211.13; MSA 7.13: "Inventories of goods, wares, materials, merchandise and supplies such as are commonly used in trade or commerce or manufacture shall, upon the filing by the owner thereof of a sworn statement with the assessing officer showing the total of such inventories for each of the preceding 12 months ending December 31, be assessed on the basis of the average monthly inventory for such 12-month period. The average monthly inventory shall be computed on the basis of the number of months during which said inventories of goods, wares, merchandise and supplies had a taxable situs in the assessing district. *No assessing officer shall be restricted to any particular period in the preparation of the assessment roll but may survey, examine or review properties at any time prior to or after said tax day.*"(Emphasis supplied.)

MCLA 211.2; MSA 7.2: "Taxable status of persons and real and personal property shall be determined as of each December 31, which shall be deemed the tax day for the immediately succeeding calendar

allow the assessing officer to "survey, examine or review properties at any time prior to or after said tax day", the assessor is not limited to using the replenishment time immediately after the tax date. We cannot agree.

The mere fact that the assessor may examine property prior to or after the tax date for assessment purposes does not affect the time that the assessment of current operational needs is to be made. Regardless of the time the assessor looks to determine the amount of inventory a taxpayer has on hand, it is necessary for the assessor to determine current operational needs as of the tax date by computing the replenishment time as of that date. See *Knight Newspapers, Inc v Detroit,* 16 Mich App 438 (1969).

Moreover if there is any doubt as to the meaning of MCLA 211.13; MSA 7.13 or MCLA 211.2; MSA 7.2, they must be construed against the government and in favor of the taxpayer. *Ecorse Screw Machine Products Co v Corporation & Securities Commission,* 378 Mich 415 (1966); *Consumers Power Co v Corporation & Securities Commission,* 326 Mich 643 (1950).

We hold, therefore, that 14 days was the correct replenishment time to be used in computing the taxpayer's current operational needs.

The parties next ask this Court to rule on who has the burden of proof. We can only say in regard to this issue that there are no proofs when, as here, all of the facts have been stipulated. In such cases our only duty is to apply the law to the factual situation as the parties have stipulated

year which is also the tax year, any provisions in the charter of any city or village to the contrary notwithstanding. *No assessing officer shall be restricted to any particular period in the preparation of the assessment roll but may survey, examine, or review properties at any time prior to or after the tax day.*"(Emphasis supplied.)

them to be. There is, therefore, no burden of proof problem.

Affirmed.

HOLBROOK, P. J., concurred.

DANHOF, J. *(dissenting).* I agree with the majority that on the facts the rule of *City & County of Denver v Denver Publishing Co,* 153 Colo 539, 387 P2d 48 (1963) should be applied. However, I must dissent from the way in which the majority applies that rule.

The majority purports to distinguish *Beall Pipe & Tank Corp v State Tax Commission,* 254 Or 195; 458 P2d 420 (1969), *Knight Newspapers, Inc v Detroit,* 16 Mich App 438 (1969), and *Orr Felt & Blanket Co v Schneider,* 3 Ohio St 2d 14; 209 NE2d 150 (1965), on the ground that those cases involved manufacturers whose sole source of supply was foreign. Assuming for the moment that this is a valid distinction, I cannot agree that it is the case. In *Beall* and *Knight* it is clear that the manufacturers satisfied at least a small part of their requirements from domestic sources. The opinion in *Orr Felt* does not make it clear whether or not any of the particular type of wool involved was obtained domestically. Moreover, even if those cases had involved manufacturers using only foreign raw materials, I do not see why that fact should serve to distinguish this case. We are here considering the taxable status of the plaintiff's foreign inventory, and I cannot see why the fact that the plaintiff satisfies some of its needs domestically should make any difference.

If this case is to be distinguished from the previously cited cases it seems to me that the distinction must be based on the fact that the plaintiff receives its foreign steel over an inland

water route and that the navigation season was over on tax day. I do not regard this as a viable distinction. The majority seems to assume that this is a case where foreign resupply has been rendered impossible. Whatever may be the proper rule to apply in that case this is not such a case. The plaintiff could have the steel shipped to an ice-free port and then transported to its warehouse by rail.

The majority seems to assume that after December 31 the plaintiff will use its foreign steel and add a comparable amount of domestic steel to its inventory. There is nothing in the record to support this assumption. Indeed from this record one must conclude that the plaintiff's practice is to replenish its inventory of foreign steel with more foreign steel. It appears from the parties' stipulation of facts that on December 31 of the years in question the plaintiff had on hand enough foreign steel to meet its requirements for foreign steel until after April 1, the date the parties have stipulated for the opening of the seaway. If the plaintiff ordered foreign steel on December 31 they could expect delivery in about 3 months as opposed to the stipulated 2-1/2 months average lag time. If we assume that the seaway is closed by December 1, there is still only a four-month lag time. The plaintiff is able to, and in fact does, stockpile enough inventory of foreign steel to meet its needs for foreign steel during the time the seaway is closed. When the seaway is open it receives more foreign steel. It seems to me that it is highly artificial to say that only two weeks inventory should be taxed because the plaintiff hypothetically could replenish its foreign inventory with domestic in two weeks.

In *Orr Felt & Blanket Co v Schneider,* 3 Ohio St

2d 14, 24; 209 NE2d 150, 156 (1965), the court dealt with an argument regarding alternative sources of supply in the following words:

"This court is also of the opinion that although the evidence indicates that the taxpayer could have secured a new supply of imported grease wool from eastern importers within 30 days, the taxpayer chose to import its own grease wool from foreign countries for the valid reasons that it could reduce its inventory cost by six to twelve per cent and insure the obtaining of a better quality and a more uniform grease wool.

"The taxpayer having made this choice, the rule applied to the taxpayer should be that that amount of grease wool removed from the bonded warehouse and in inventory which is required to meet 'current operational needs' for the length of time it takes to secure an additional supply from the foreign source which the taxpayer has selected to supply its grease wool is taxable."

As I view the case the plaintiff has made its choice. Now let it pay its taxes. I would reverse and remand.